IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HALLMARK CAPITOL GROUP, L.L.C., Plaintiff, v. THE UNITED STATES, Defendant. | No. 08-356C (Judge Williams) |

**MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, defendant respectfully requests that the Court dismiss this matter for lack of subject matter jurisdiction.

DEFENDANT'S MEMORANDUM

QUESTION PRESENTED

1. Whether Hallmark Capitol Group, L.L.C., possesses standing to protest a proposed modification to the Department of the Air Force Multi-Wing Logistics Support Services Contract ("MWLSC") that is the subject of this bid protest.

STATEMENT OF THE CASE

I. Nature Of The Case

This is a post-award bid protest filed by plaintiff Hallmark Capitol Group, LLC. ("Hallmark") protesting a proposed modification that would add work at Patrick Air Force Base ("AFB") to the MWLSC. Hallmark alleges that this modification is a cardinal change to the contract.

II. Statement Of Facts

On April 12, 2007, Peterson Air Force Base issued a request for proposals ("RFP") for the MWLSC. Appendix ("A") 1. The RFP and performance work statement provided for the supply of a variety of logistics support services.

The RFP, in section F-3 ("Place of Performance"), described the bases at which the services would be provided as follows:

> Services shall be performed at the following locations:
>
> 1. Peterson AFB, CO
> 2. Schriever AFB, CO
> 3. Buckley AFB, CO
> 4. F.E. Warren AFB, WY
> 5. Malmstrom, AFB MT
> 6. Vandenberg AFB, CA
>
> Patrick AFB and Los Angeles AFB are included in the scope of this contract should the support detailed in section 2 of this Performance Work Statement be required at those locations, and negotiated into the basic contract. As such performance may occur at the following two places:
>
> 7. Patrick AFB, FL
> 8. Los Angeles AFB, CA[1]

A8.

---

[1] The Government is also entitled to dismissal or judgment because this protest is untimely. Specifically, we believe that the only possible interpretation of section F-3 is that the Air Force advised offerors that, at some point post-award, the Government might negotiate into "the basic contract" the work described in section two of the performance work statement. That is precisely what the Air Force is attempting to do through the modification at issue. To the extent that Hallmark read other provisions of the RFP as suggesting that the Air Force would not add section two work, at best for Hallmark there was a patent ambiguity that it waived by not raising pre-bid. Blue & Gold Fleet, L.P. v. United States, 492 F. 3d 1308, 1313 (Fed. Cir. 2007). However, because the Court likely provided for argument on the business day after the filing of our motion to dismiss based upon our statement at the status conference that we intended to file a motion relating to standing, we have not briefed this additional issue. If the Court would like the Government to file a supplemental brief on this issue, we can do so.

Section two of the performance work statement described the full range of logistics support services to be provided at the Air Force bases covered by the MWLSC. A15-83. Throughout the solicitation process, the only provision for services at Patrick AFB was the inclusion of this base as one of the bases supported by the logistics support center. The logistics support center, as described in the performance work statement, essentially administers management of base inventory at the various bases using a computer system. A18.

As described in the amended complaint, Patrick AFB had been procuring its logistics support services for several years through a Small Business Administration section 8(a) contract. Amended Complaint ("Am. Co.") ¶ 30. In 2006, Patrick AFB issued a notice of re-competition. Id. at ¶ 31 and Exhibit ("Ex.") 6. The notice listed the logistics services that Patrick AFB sought. Id. These services were similar in nature to what the MWLSC would seek the following year. The Patrick AFB section 8(a) contract is currently scheduled to expire on July 30, 2008. Am. Co. ¶ 36.

In September 2007, Peterson AFB awarded the MWLSC contract to Santa Barbara Applied Research, Inc. Am. Co. ¶ 28. The contract provided for a base year price of about $15.9 million with four options years at slightly lower prices. There were several protests filed by disappointed offerors, including one by Hallmark. Am. Co. ¶¶ 28-29. As a result, performance of the MWLSC did not commence until December 2007.

On October 5, 2007, the Air Force issued a notice canceling the Patrick AFB re-competition. Am. Co. Ex. 7. The notice stated that the Air Force now intended to procure these services through the MWLSC. Id.

More than seven months after the Air Force issued this notice, Hallmark filed its complaint in this Court. As we advised the Court during the initial status conference, as a result of further development of the proposed modification, the Air Force no longer intended to obtain through the proposed MWLSC modification several of the services that had been listed in the 2006 Patrick AFB notice of re-competition. The current status of the proposed modification is as follows:

| FUNCTIONAL AREA | CURRENT PWS | PATRICK PWS INPUTS |
|---|---|---|
| Quality Control | X | X |
| Logistics Support Center | X | X[2] |
| Base Supply | X | X |
| Hazardous Material Mgmt | X | X |
| Vehicle Operations & Maint. | X | X |
| Fuels Management | X | X |
| Cargo Movement | X | X |
| Cargo Screening | X | |
| Fuels Refueler Maintenance | X | |
| Missile Maintenance Materiel Control | X | |
| Real World Events, Deployments, Exercises, Disaster Preparedness | X | X |
| Reserve Unit Support | X | X |
| Weapons Storage | X | X |

[2] As noted above, the logistics support center for Patrick was included in the original MWLSC contract.

| | | |
|---|---|---|
| Combat Oriented Supply Organization | | X |
| Materiel Control Front Range | | X |
| Environmental | X | X |
| Information Technology | | X |
| Official Travel Services | | |
| Personal Property Movement | | |
| Air Terminal | | |
| Munitions Management | | |
| Munitions Maintenance | | |
| Civil Engineering Material Acquisition | | |

As we first advised the Court in our June 6, 2008 status report, Patrick intends to procure the last six items on the above list (official travel services, personal property movement, air terminal, munitions management, munitions maintenance, and civil engineering material acquisition) using the General Services Administration ("GSA") Logistics Worldwide ("LOGWORLD") contract. This is a multiple award GSA contract that covers a wide variety of logistics support services. The LOGWORLD brochure, descriptions of the special item numbers ("SINs"), and a sample LOGWORLD contract are attached at A331-73. As a result, Peterson AFB does not intend to include these six items in the proposed modification for the MWLSC. In addition, Patrick does not intend to procure the cargo screening, fuels refueler maintenance, or missile maintenance materiel control services listed in the above chart either through the MWLSC or LOGWORLD contract. Thus, the work items that remain in dispute are the items

checked in the "PATRICK PWS INPUTS" column in the above chart, with the exception of the logistics support center.

The LOGWORLD brochure states that there are more than 200 LOGWORLD contract holders. A332. It describes the LOGWORLD contract as follows:

> This Federal Supply Schedule enables federal agencies to procure comprehensive logistics solutions that enhance or replace existing operations. Industry experts can help your agency reinvent its supply chain, acquire logistics support for a product or system, modify its transportation network, supplement its deployment capabilities, provide complete facility operations and maintenance, and much more.

A333. It further states that "Services under this Schedule are designed to support agencies in meeting their logistics requirements." A335. The only services it lists as being outside the scope of the LOGWORLD contract are construction and engineering services. Id.

On January 29, 2008, the previous Patrick AFB contracting officer, Shelley Hall, forwarded to GSA by e-mail a copy of a September 2007 Patrick performance work statement, inquiring whether these services could be acquired through the LOGWORLD contract. A379. The services listed in this performance work statement are consistent with the range of services the Air Force currently intends to acquire either through the MWLSC and the LOGWORLD contract. E.g. A380-81 (listing quality control, information technology systems, standard base supply, fuels management, combat oriented supply organization, and environmental as included services). The following day, January 29, GSA responded by stating that the services identified in the performance work statement would be "an excellent fit for LOGWORLD contractors." A378.

On February 7, 2008, Ms. Hall again contacted GSA and inquired if the only services that Patrick AFB procured through the LOGWORLD contract were official travel services, personal property movement, air terminal, munitions management, munitions maintenance, and civil engineering material acquisition, whether GSA would still consider the Patrick AFB work a good candidate for the LOGWORLD contract. A376-77. GSA responded on that same date that the "removal of some items does not affect the good fit for the LOGWORLD schedule." Id.

The Patrick AFB contracting officer also examined the LOGWORLD contract herself and determined that all of the services that Patrick sought were available in the LOGWORLD contract. A374.

The current Patrick AFB contracting officer, Linda L. Brantley, states in her declaration that, for any services she cannot obtain through the MWLSC, she intends to procure them through the LOGWORLD contract. A374.

## ARGUMENT

### I. Standards For Standing

Standing is a threshold jurisdictional issue. Myers Investigative and Security Services, Inc. v. United States, 275 F.3d 1366, 1369 (2002). "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, (1990)).

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker Act, 28 U.S.C. § 1491(b). Specifically, the Court possesses:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a

> contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. ... without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C.§ 1491(b)(1) (emphasis added). To pursue this action here, Hallmark must establish that it is an "interested party."

The Tucker Act does not define the term "interested party." The United States Court of Appeals for the Federal Circuit, in defining the term, has determined that the Tucker Act "did not adopt the APA's [Administrative Procedure Act] liberal standing standards." Myers, 275 F.3d at 1370. Rather, the Federal Circuit adopted the definition of interested party contained in the Competition in Contracting Act ("CICA") which applies to bid protests filed with the Government Accountability Office. Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551). As noted by the court of appeals, "[i]n bid protests under the Tucker Act, 'we ... construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.'" Myers, 275 F.3d at 1370 (quoting Am. Fed'n of Gov't Employees, 258 F.3d at 1302); Accord Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

Direct economic interest is deemed to be affected only where the protestor establishes that it had a "substantial chance" of securing the award absent a prejudicial defect in the process. Myers, 275 F.3d at 1369-70. "Substantial chance" means that the protestor was in the "zone of active consideration." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.

Cir. 1999). Thus, protestors who did not submit proposals, withdrew from the procurement, or finished lower than second after evaluation do not have standing to protest the procurement. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001). In addition, this Court has ruled that a bidder which submitted a late bid lacks standing, Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 176 (2005); as does a subcontractor to an offeror. Eagle Design & Mgmt, Inc. v. United States, 62 Fed. Cl. 106, 109 (2004).

In the context of a protest where the protestor, like in the present case, alleges that a modification to the contract is a cardinal change and must be subject to competition, this Court has held that the test for standing is "whether the protesting contractor could compete for the new contract work and whether it has an economic interest in such work. . . ." Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 456 (2001). Thus, the protestor can establish standing by demonstrating that it would participate as a bidder for the work that is the subject of the modification. Id.

In this case, as established in Ms. Brantley's declaration (A374), if Hallmark were successful in obtaining a ruling from the Court that the proposed modification to the MWLSC would be a cardinal change, she intends to obtain those services through the LOGWORLD contract. According to a search of the GSA web site, Hallmark is not a current LOGWORLD contractor, and, therefore, would not be able to compete for the services at issue if they were procured through LOGWORLD. Accordingly, it does not have standing to protest the MWLSC modification because there is no way it will be able to compete for these services. Am. Fed'n of Gov't Employees, 258 F.3d at 1302; Northrop Grumman, 50 Fed. Cl. at 456.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court dismiss Hallmark's bid protest for lack of subject matter jurisdiction.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tel: (202) 353-1618
Fax: (202) 514-8624

June 27, 2008

Attorneys for Respondent

# INDEX TO APPENDIX


| Document | Pages |
|---|---|
| Request for Proposals April 12, 2007 (Excerpts) | 1-9 |
| Performance Work Statement, May 8, 2007 | 10-135 |
| Letter to Santa Barbara Applied Research | 136-37 |
| Performance Work Statement June 26, 2008 | 138-325 |
| Attachment to Performance Work Statement (CLIN Structure) | 326-30 |
| LOGWORLD Brochure | 331-47 |
| LOGWORLD SIN Descriptions | 348-49 |
| Sample LOGWORLD Contract | 350-73 |
| Declaration of Linda Brantley and E-mails between Patrick contracting officer and GSA | 374-79 |
| Patrick performance work statement sent to GSA | 380-483 |

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 27th day of June, 2008, a copy of the foregoing "DEFENDANT'S STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell